SHACKLEFORD *v.* SHACKLEFORD.

4-4703

Opinion delivered June 28, 1937.

*John A. Hibbler,* for appellants.

*James G. Lanier* and *Mann & Mann,* for appellee.

HUMPHREYS, J. Quintella Shackelford, the appellee in this case, was the wife of John Shackelford, who died intestate on the 25th day of August, 1935, leaving as his next of kin his wife, Quintella Shackelford, and his father, Henry Shackelford. John Shackelford and Quintella Shackelford had no children born to them. At the time of John Shackelford's death he owned, in addition to his homestead, three pieces of real estate in Forrest City, one of which was encumbered for $754 and some personal property consisting of a truck upon which he owed most of the purchase money, some cord wood on the yard, and a stock of goods of the value about $400 or $500 and something like $80 or $90 in cash which had been deposited in the bank.

The debts against the estate, including the balances which he owed upon the truck and one piece of real estate, amounted to about $2,183.

On September 16, 1935, Quintella Shackelford was appointed administratrix of the estate of John Shackelford, deceased, by the probate court of St. Francis county and she duly qualified as administratrix of the estate of her husband. She filed an inventory, but took no further steps due to the fact that Henry Shackelford, her father-in-law, executed a deed to her for his interest in the real and personal property he inherited from his son, John Shackelford. John Shackelford and Quintella Shackelford owned the homestead by what is known as an estate in entirety, so Henry Shackelford inherited no part of the homestead.

After receiving and recording the deed Quintella Shackelford treated the property as her own, continued to operate the store, the wood yard, and a filling station which is on one of the lots, in her own name and paid all the debts against the estate of her husband without requiring that the claims be probated. A short time after she received the deed from him, Henry Shackelford, who was residing with her in accordance with the terms of the deed made a visit to his children and grandchildren with the avowed intention of returning in a short time and living with her. When he did not return she went after him, at which time he told her she had been kind to him and had cared for him as she had agreed to, but that he had decided to live with his children and declined to return.

On December 10, 1935, Henry Shackelford brought this suit to set aside the deed on the alleged ground it had been procured through fraud and undue influence.

An answer was filed to the complaint by appellee denying the allegations in the complaint.

Depositions were then taken on the issue of whether the deed was procured through fraud and undue influence, but the evidence was not confined to that issue alone. It was extended so as to show the value of all the assets

owned by John Shackelford when he died and the value of them, the debts he owed, what appellee had done with the assets and whether she had included all the assets in the inventory she filed as executrix in the probate court, and whether the claims against the estate had been probated and allowed before she paid them.

Relative to the execution of the deed appellee testified that Henry Shackelford executed and delivered the deed to her without being influenced by her or any one in her behalf. She was not in the room when he executed the deed, having been told to leave the room by W. J. Lanier, who had drawn the deed.

J. G. Lanier testified that at the time Henry Shackelford executed the deed those present in the room were his father, W. J. Lanier, and Thomas Catling, E. T. Ferguson, Jr., G. M. Dooly and Charlie Stuart; that his father read every word of the deed to Henry Shackelford and explained it to him, then asked him if he wanted to sign it and when he said he did that he, witness, signed Henry Shackelford's name for him and Henry Shackelford made his mark; that Mr. Dooly then asked Henry Shackelford if he understood what the consideration in the deed was and being informed that he did, took his acknowledgment to the deed. The witnesses to Henry Shackelford's signature by mark and in fact all those present in the room at the time of the execution of the deed, except W. J. Lanier, who had died, testified that Henry Shackelford was in good health, of sound mind, heard the deed read and explained and understood that it was a deed and that it conveyed all his interest in his son's estate to appellee in consideration that she would wait upon, take care of him and give him a good home with her the rest of his life and bury him when he died. At the time of the execution of the deed Henry Shackelford had resided with appellee from the 18th day of September, 1935, until November 1, 1935, or about six weeks and necessarily knew what kind of treatment and what kind of home he was getting for his interest in the property he was conveying to appellee. He had been blind since 1921 and needed and required exceptional care.

Henry Shackelford testified, in substance, in his direct examination that he thought when he signed the instrument it was an application for a burial insurance policy. Henry Shackelford and appellee had talked about him taking out burial insurance. He said the conversation occurred before he signed the instrument and she testified that it was after he signed the deed. On cross-examination he admitted the instrument was read to him and that it said nothing about insurance. He, also, admitted that it was a deed he signed although he claimed the word ''deed'' was not mentioned. He said his mental faculties were fine and sound. He admitted that after signing the deed he talked to one of his sons-in-law and became dissatisfied and authorized the institution of this suit to set aside the deed. He, also, admitted that he left and went back to live with his children of his own accord and had refused to return to the home of appellee although she requested him to do so.

After the depositions were taken Henry Shackelford died and the cause was revived in the name of the other appellants who were his sons and daughters.

After hearing the evidence the chancery court made a finding that the deed was procured through undue influence, but that appellee had paid more to the creditors of the estate of John Shackelford, deceased, than the property involved was worth and subrogated appellee to the right of the creditors and divested appellants' interest by inheritance from their father out of them and invested all the property in appellee.

This latter finding was in effect an encroachment upon the jurisdiction of the probate court where the estate was being administered. It was within the exclusive jurisdiction of the probate court in the first instance to allow or disallow claims against the estate and not within the jurisdiction of the chancery court to indirectly allow unprobated claims against the estate and subrogate appellee, who had paid them, to the rights of the creditors of the estate.

The chancery court rendered a correct decree in divesting appellants' apparent interest by inheritance in

said property out of them and vesting same in appellee, but for another reason than that given by him. The correct reason is that Henry Shackelford conveyed all his interest in the estate, real and personal, of his son, John Shackelford, deceased, to appellee voluntarily and without undue influence and for a valuable consideration. The overwhelming evidence in the record is to that effect.

The decree is, therefore, affirmed.